RALPH J. SWANSON, CA STATE BAR NO. 67751
H. ANN LIROFF, CA STATE BAR NO. 113180
SHANNON N. COGAN, CA STATE BAR NO. 214976
BERLINER COHEN
TEN ALMADEN BOULEVARD
ELEVENTH FLOOR
SAN JOSE, CALIFORNIA 95113-2233
TELEPHONE: (408) 286-5800
FACSIMILE: (408) 998-5388
ralph.swanson@berliner.com
ann.liroff@berliner.com
shannon.cogan@berliner.com

ATTORNEYS FOR PLAINTIFFS
WINDSOR AUCTIONS, INC., JEWELRY AUCTIONS
CORPORATION AND UNIVERSAL COLLECTIBLES, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINDSOR AUCTIONS, INC., a Florida corporation, JEWELRY AUCTIONS CORPORATION, a New Jersey corporation, and UNIVERSAL COLLECTIBLES, LLC, a Delaware Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>eBAY INC., a Delaware corporation,<br><br>Defendant. | CASE NO. C07 06454 RMW<br><br>AMENDED COMPLAINT FOR:<br><br>(1) Violation of Unfair Practices Act California Business and Professions Code § 17045;<br><br>(2) Common Law Unfair Competition<br><br>(3) Breach of the Implied Covenant of Good Faith and Fair Dealing<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Windsor Auctions, Inc. Jewelry Auctions Corporation and Universal Collectibles, LLC (together, "Plaintiffs") allege as follows:

**PARTIES**

1. Plaintiff Windsor Auctions, Inc. ("Windsor Auctions") is a Florida corporation having its principal place of business at 111 Flagship Drive, Lutz, Florida 33549.

2. Plaintiff Jewelry Auctions Corporation ("JA") is a New Jersey corporation having its principal place of business at 36 Franklin Turnpike, Waldwick, New Jersey, 07463.

3. Plaintiff Universal Collectibles, LLC ("Universal") is a Delaware Limited Liability Company with its principal place of business at 3681 Commercial Avenue, Northbrook, Illinois 60062

4. Defendant eBay Inc. ("eBay") is a Delaware corporation having its principal place of business at 2145 Hamilton Avenue, San Jose, California 95125.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, in that there is diversity of citizenship between the Plaintiffs and Defendant, and the amount in controversy exceeds $75,000.00.

6. This Court has personal jurisdiction over eBay in that eBay's principal place of business is located in this jurisdiction.

7. Venue is proper is this district pursuant to 28 U.S.C. § 1391, as this is a judicial district in which a substantial part of the events giving rise to the claims occurred.

**COMMON ALLEGATIONS**

8. eBay owns and operates the largest on-line marketplace in the world at its website located at www.ebay.com. eBay promotes the goods and services of others by making available and facilitating a worldwide on-line live and static auction marketplace through which users may advertise their goods and services via the Internet. eBay facilitates direct sales transactions between users, and also facilitates live auctions through its website located at www.ebayliveauctions.com ("eBay Live Auctions").

9. Commencing in 1996, Plaintiff Universal had a direct relationship with eBay as a Power Seller. In 2003, Plaintiff Universal was approached by eBay to partner in creating a platform to aggregate non-auctioneers to sell into the eBay Live Auctions website. As such. Plaintiff Universal had a direct line to eBay Live's supporting personnel and a direct contractual relationship with eBay.

10. In 2002, Live Auctioneers LLC ("LA"), a New York limited liability company, established a partnership with eBay Live Auctions to help bring auction catalogs to the Internet for live on-line bidding. LA offers technology and services connecting auction houses and

1  bidders through eBay Live Auctions.  LA offers a technological platform through which remote
2  auction transactions can be made on eBay's Live Auctions website.  LA has no other business
3  than to assist and work in partnership with eBay Live Auctions.

4      11.    In 2005, at the time that Plaintiffs Windsor Auctions and JA attempted to register
5  on-line with eBay Live Auctions directly, Plaintiffs were contacted by a representative of LA,
6  and informed that eBay Live Auctions was no longer accepting direct clients.  The LA
7  representative also told Plaintiffs that if they contracted with LA and eBay Live Auctions, that
8  such a relationship would be identical to contracting directly with eBay Live Auctions, as LA
9  had a partnership agreement with eBay Live Auctions to service eBay Live Auctions accounts.
10 Plaintiffs Windsor Auctions and JA therefore each signed a separate, written form agreement
11 with eBay ("eBay Agreement"), as well as an agreement with LA ("LA Agreement").

12     12.    Plaintiffs have not attached to this amended pleading a copy of the eBay
13 Agreement entered into by any of the Plaintiffs, because these form contracts contain a
14 confidentiality provision.  However, the eBay Agreements for both Windsor Auctions and JA
15 have been provided to the Court under seal at this time by eBay and said eBay Agreements are
16 incorporated by reference herein.

17     13.    At no time were Plaintiffs Windsor Auctions or JA given the opportunity of
18 contracting directly with eBay Live Auctions. The eBay Live Auctions website where Plaintiffs
19 Windsor Auctions and JA submitted their applications did not provide any phone numbers to
20 contact eBay Live Auctions directly, and no alternative was offered to them.  Accordingly,
21 Plaintiffs Windsor Auctions and JA believed the representations made to them--that they were
22 purchasing like services, comparable to those customers having a direct relationship to eBay
23 Live Auctions, and for the same price, because that is what they were told at the time of their
24 registration and signing of the eBay Agreement and the LA Agreement.

25     14.    eBay Live Auctions and LA split between them the commissions and "final value
26 fees" where auctions on behalf of eBay Live Auctions customers are conducted with the
27 assistance of LA.  Therefore, eBay receives less revenue on those live auction sales that are
28

facilitated by one of its partners than it does on live auctions conducted directly through eBay Live Auctions.

15. Plaintiffs Windsor Auctions and JA are in the business of selling jewelry. In 2005, when they spoke with LA, Windsor Auctions was required to sign agreements with both LA and eBay in order to be able to sell jewelry domestically and internationally through the eBay Live Auctions' platform.

16. After signing the aforementioned eBay and LA Agreements, Plaintiffs Windsor and JA commenced selling jewelry through eBay Live Auctions. From mid-2005 through 2006, sales for Windsor Auctions through eBay's Live Auctions exceeded $1.4 million.

17. Commencing in August 2004, Plaintiff Universal began to hold regular live auction events for jewelry, coins, art and collectibles, each auction event consisting of hundreds of live auction lots, directly on the eBay Live Auctions platform. Between 2004 and increasingly throughout 2007, Plaintiff Universal complained to various persons responsible for managing eBay Live Auctions about bidder and buyer complaints related to the lack of coordination between the end times of live auction lots and the end times of the live auction events. Each and every time that Plaintiff Universal complained, eBay told them that they were aware of the problem, eBay did not know how to fix the problem and eBay would explore the possibility of a fix internally, but the problem was not likely to be remedied. These statements were not accurate. In fact, a fix to the problem did exist, which eBay did not make known to any of the Plaintiffs.

18. Commencing sometime in 2006, all three Plaintiffs realized that instead of enjoying increased live auction sales, their domestic and international sales and revenues plummeted dramatically, while the sales of a direct competitor using the eBay Live Auctions platform to conduct live auction events for jewelry did not seem affected. Plaintiff Universal in an effort to increase its gross sales and profitability expanded its auction lines and increased the number of auctions it was holding each week. Plaintiffs Windsor Auctions and JA increased the number of their daily and weekly auctions in order to increase their own sales. All of these efforts were costly and unsuccessful for these Plaintiffs.

19. Specifically, during the time that all three Plaintiffs' sales were not growing but instead were being dramatically reduced, Plaintiffs Windsor Auctions and JA noticed that there was a corresponding substantial increase in the sales of one of their competitors, George Molayem ("Molayem"). Molayem runs a variety of businesses, including but not limited to Hillstreet Jewelers, Paramount Auctions, and Jewelry Overstock Auctions, all of which conduct live auction events through eBay Live Auctions directly.

20. In 2004, prior to the time that Plaintiffs Windsor Auctions and JA entered the marketplace as live auction sellers, Molayem contracted directly with eBay Live Auctions as a live auction seller for the same services that Plaintiffs Windsor Auctions and JA were told in 2005 that they would receive from eBay Live Auctions with the assistance of LA. Plaintiff Universal had been a direct auction seller with eBay Live Auctions for a significantly longer period of time—since October 2003. Unlike Plaintiffs Windsor Auctions and JA, Molayem was not directed to or required to use an eBay Live Auctions partner when he entered the eBay Live Auction arena.

21. The fact that Molayem and his entities were direct clients of eBay Live Auctions did not create any different terms or conditions for him from those given to Plaintiffs Windsor Auctions and JA. Plaintiff Universal was already a direct customer of eBay when Molayem entered the eBay Live Auctions platform. All three Plaintiffs and Molayem's entities were required to sign the same form contracts with eBay in order to sell goods on the eBay Live Auctions platform.

22. Live auctions through the eBay platform are conducted in an entirely different manner from static auctions. For a live auction, the auction seller must upload a live auction catalog, which contains as many as 600 to 800 lots, onto the eBay Live Auctions website which are auctioned off in sequence over an 8 to 12-hour period. Each live auction lot is displayed for 30 to 60 seconds to the millions of potential buyers registered as users on the eBay system. Due to the limited time exposure of each lot, buyers seeking to purchase lots at a bargain from a live auction event will search the eBay platform by looking at lots with the earliest ending times, as they are positioned at the top of hundreds of thousands of eBay core listings. It is therefore

essential to live auction sellers that their lots be moved through the core listings on a staggered end time basis in order to jettison them to the forefront of core listings for the maximum viewing time by the largest number of potential buyers.

23. When Plaintiffs Windsor Auctions and JA noticed the dramatic drop in their sales as described above, they contacted eBay Live Auctions personnel on numerous occasions in order to receive an explanation as to why Molayem was able to keep his sales items so prominently listed in eBay's "core listings," while their own similar listings were buried many pages behind Molayem's listings in the eBay core until shortly before the auction event ended. Initially, eBay representatives denied that they knew how Molayem was accomplishing this feat. Plaintiffs' exploratory efforts with eBay to get a satisfactory answer to their question therefore failed. Plaintiff Universal had been complaining about the same problem with the lack of coordination of the end time of the live auction lots and the core placement during live auction events for several years. Plaintiff Universal was consistently told that eBay had no idea how to fix the problem.

24. Finally, when it became clear that there was no explanation from eBay, Plaintiffs Windsor and JA asked Molayem directly. They were surprised when Molayem told them he had access to a live auction end time duration change function tool contained in eBay Live Auctions' Catalog Management Set-Up Page (the "End Time Duration Tool"). When Molayem manipulated the End Time Duration Tool with eBay's knowledge and acquiescence eBay allowed him to upload auction lots in batches with staggered end times. Using this tool, Molayem was able to place his live auction lots at the front of eBay's "core listings," which appear first in sales listings on the eBay website.

25. eBay purposely hid the End Time Duration Tool from all the Plaintiffs by not acknowledging its existence when asked and thereby making it unavailable to the Plaintiffs. As a proximate cause, all Plaintiffs' live auction lots were listed at or near the end of the total listings until just a few minutes before the end time of the live auction event—many hours after the live auction lots had ended and come off the eBay site. In fact, this is precisely the problem that Plaintiff Universal had identified several years earlier, and which eBay told Plaintiff

1 Universal that there was no way to fix.  In reality, the information given to Plaintiff Universal
2 was deliberately inaccurate and false.  Plaintiff Universal did not discover the truth until Plaintiff
3 Universal learned the truth from Plaintiffs Windsor Auctions and JA.

4  26. Accordingly, all three Plaintiffs' live auction lot listings were so buried as to be
5 virtually invisible through much of the duration of a 12-hour live auction event, and that lack of
6 visibility had a dramatically negative effect on Plaintiffs' sales and profits.

7  27. When Plaintiffs Windsor Auctions and JA informed eBay Live Auctions
8 personnel as to how the End Time Duration Tool gave Molayem and his entities an unfair
9 advantage over other live auction jewelry sellers, eBay acknowledged that it was aware of the
10 tool, but it was unwilling either to make it available to all live auction sellers or to shut it down
11 completely, because Molayem's usage of the End Time Duration Tool was so lucrative for eBay.
12 To date, eBay has not acknowledged the existence of the End Time Duration Tool to Plaintiff
13 Universal.  Had eBay either told Plaintiff Universal about the End Time Duration Tool or, at a
14 minimum let Plaintiff Universal know about its existence, Plaintiff Universal would not have
15 experienced the drop in sales that it experienced over the last three years, which led it to expand
16 into different markets and increase live auction frequency, all at considerable cost.  To the
17 contrary, the End Time Duration Tool would have substantially increased Plaintiff Universal's
18 sales and profits using the eBay Live Auction platform.

19  28. Plaintiffs allege on information and belief that eBay initially assisted Molayem in
20 his understanding and use of the End Time Duration Tool so as to allow him to obtain the
21 maximum benefit from its usage.  Then eBay secretly allowed Molayem to continue to use the
22 tool, while denying its existence when asked directly on many occasions by many live auction
23 sellers, including all three Plaintiffs, and preventing all of the Plaintiffs from using it.  eBay now
24 openly condones such use of the End Time Duration Tool by Molayem.  Throughout the time
25 prior to the termination of their user IDs, Plaintiffs Windsor Auctions' and JA's customers
26 complained that they were unable to see or access Plaintiffs' lots until the live auction event had
27 ended at which point the lots were closed and could not accept any bids at all.  This was also the
28

1  case with Plaintiff Universal's customers from the time Plaintiff Universal started using the live
2  auction platform in January of 2004.

3       29.     This reckless approach by eBay has resulted in a competitive advantage for
4  Molayem and his eBay Live Auctions businesses, and a concomitant competitive disadvantage
5  for all other live auction sellers who did not know of and were not told by eBay—even when
6  asked—about the End Time Duration Tool, including all three Plaintiffs. Such recklessness by
7  eBay effectively prevented all Plaintiffs from having access to the Auction End Time Tool.

8       30.     In the first part of December 2007, prior to filing the instant action, Plaintiffs
9  Windsor Auctions and JA through counsel wrote to eBay demanding that it either shut down the
10 End Time Duration Tool or make it available to all live auction sellers.

11      31.     When no response was given, Plaintiffs Windsor Auctions and JA filed suit on
12 December 21, 2007. Plaintiff Universal, which was similarly disadvantaged by eBay's
13 recklessness and Molayem's usage of the End Time Duration Tool, has joined in the Amended
14 Complaint at this time.

15      32.     Subsequent to the filing of this action, Plaintiff Windsor Auctions became a direct
16 customer of eBay Live Auctions in January 2008, when LA did not renew its long-term contract
17 with it. After Windsor Auctions began operating on the eBay Live Auctions platform directly, it
18 had contact with eBay service personnel and access to the End Time Duration Tool for a period
19 of two and one-half months, during which time its sales dramatically improved. Moreover, after
20 Plaintiffs Windsor Auctions and JA informed Plaintiff Universal about the End Time Duration
21 Tool, Universal began using the End Time Duration Tool and its auction sales also improved
22 significantly.

23      33.     When eBay's outside counsel learned that Windsor Auctions was using the Live
24 Auction Platform directly, on March 5, 2008, it retaliated against both Plaintiff Windsor
25 Auctions and JA and their principals by giving notices of termination of all user IDs associated
26 either directly or indirectly with Greg Skibbee, the President of both Plaintiffs Windsor Auctions
27 and JA. User IDs are the names that sellers select to identify themselves on the eBay platform.
28 Without a valid user ID, a seller cannot access the eBay platform to advertise and sell its wares.

1  By terminating Plaintiffs Windsor Auctions' and JA's user IDs without justification, and refusing to replace them with new user IDs, eBay effectively banned Plaintiffs from doing business on any platform of the eBay marketplace. This improper action by eBay essentially put Plaintiffs Windsor Auctions and JA out of business. Plaintiff Universal shares the same concern at it is added as a Plaintiff in this action.

34.  In order to avoid the collapse of Plaintiffs Windsor Auctions' and JA's on-line live auction businesses and the closure of Plaintiffs' lucrative eBay stores that such terminations would cause, Plaintiffs' counsel wrote to eBay counsel on March 19, 2008, requesting that eBay reconsider its decision due to the fact that there was no legal justification for the terminations.

35.  eBay ignored the letter and shut down all user IDs associated either directly or indirectly with Greg Skibbee on April 9, 2008. By terminating Plaintiffs Windsor Auctions' and JA's user IDs, eBay also effectively terminated the Windsor Auctions-UK account of Susan Allen, which is unrelated to this action. To date, that account remains closed.

36.  After eBay terminated all of Plaintiffs Windsor Auctions' and JA's user IDs, LA also terminated its relationships with said Plaintiffs, because it was informed by eBay that Plaintiffs' user IDs were suspended.

## FIRST CAUSE OF ACTION

## Unfair Practices Act – California Business and Professions Code § 17045

### (As to All Plaintiffs)

37.  All three Plaintiffs incorporate by reference paragraphs 1 through 36 inclusive, as if fully set forth here.

38.  As set forth above, Plaintiffs Windsor Auctions' and JA's use of eBay's live auction services is on like terms and conditions as Molayem's. Plaintiff Universal was a long-term eBay direct customer. eBay extended to Molayem a special privilege, which consisted of the use of the End Time Duration Tool. That same privilege was not extended to any of the Plaintiffs. In fact, when eBay was asked, all three Plaintiffs were told that no such function to coordinate the end times of live auction lots and to maximize core visibility during specific live

auction event times existed, and that the live auction lot end times could not be changed to coordinate with the ending of the live auction event.

39. eBay's extension to Molayem of this special privilege has injured all three Plaintiffs in that their sales and revenues have declined substantially as a result of their inability to use the End Time Duration Tool, while Mr. Molayem, a direct competitor of all three Plaintiffs, has enjoyed unfettered use of the same.

40. eBay's awareness of the End Time Duration Tool, while denying its existence to all who asked about its existence created an unfair competitive advantage for Molayem and a distinct disadvantage for all three Plaintiffs specifically. Its secret acquiescence in Molayem's use of the tool tends to, and in fact does, destroy competition, in that all three Plaintiffs and Molayem, who are competitors in the same marketplace, are not competing on an equal basis. In short, Molayem's ability to display the lots in his various auction catalogs on a staggered end time basis during a lengthy auction have given him the ability to display his jewelry pieces visibly in the core listings, while Plaintiffs' lots have been shut out entirely from the front of the core listings until shortly before the expiration time of their live auction event.

41. eBay assisted Molayem and acquiesced in his use of the End Time Duration Tool because Molayem's completed sales generated more revenue for eBay than do sales by live auction sellers who did not use the End Time Duration Tool. With the use of the Tool, Molayem was able unfairly to corner the live auction jewelry and coin markets to all three of the Plaintiffs' detriment. None of the Plaintiffs were given the same advantage. This unfair treatment accorded Molayem increased eBay's revenues, which encouraged it to continue providing a competitive advantage to Molayem over all three Plaintiffs.

42. eBay's conduct, as described herein, has caused all three Plaintiffs competitive injury, as also described herein. As a proximate result of eBay's actions, Plaintiffs have sustained damages in an amount according to proof at trial in excess of this Court's jurisdictional minimum.

///

///

## SECOND CAUSE OF ACTION

## Common Law Unfair Competition

### (As to All Plaintiffs)

43. Plaintiffs incorporate by reference paragraphs 1 through 42 inclusive, as if fully set forth here.

44. eBay has engaged in unfair competition, by making available to Molayem and instructing Molayem in the use of the End Time Duration Tool to the detriment of the Plaintiffs.

45. eBay continues to engage in unfair competition, by not providing the End Time Duration Tool to all similarly situated sellers using eBay Live Auctions.

46. eBay's conduct has caused Plaintiffs competitive injury, as described herein. As a proximate result of eBay's actions, Plaintiffs have sustained damages in an amount according to proof at trial in excess of this Court's jurisdictional minimum.

## THIRD CAUSE OF ACTION

## Breach of the Implied Covenant of Good Faith and Fair Dealing

### (As to All Plaintiffs)

### Count 1

47. Plaintiffs incorporate by reference paragraphs 1 through 46 inclusive, as if fully set forth here.

48. On or about 1995, Plaintiff Universal entered into the eBay Agreement and, thereafter, began conducting live auction events on the eBay Live platform in August 2004. On or about the spring of 2005 and 2006 respectively, Plaintiffs Windsor Auctions and JA entered into the eBay Agreement, pursuant to which Plaintiffs Windsor Auctions and JA would sell jewelry through eBay Live Auctions. eBay agreed to provide a venue for all three Plaintiffs to conduct on-line live auction events, and Plaintiffs agreed to pay eBay certain fees for using that venue to sell their respective live auction lots on the eBay Live Auctions platform.

49. All three Plaintiffs have performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the eBay Agreement.

50. eBay has engaged in unfair business practices and unfair competition as set forth above in connection with the eBay Agreement, by providing the End Time Duration Tool to Molayem but not to Plaintiffs, who contracted for like-kind services with eBay.

51. Plaintiffs reasonably expected that entering into the eBay Agreement with eBay would put Plaintiffs on equal footing with all other sellers using the eBay Live Auctions platform. eBay's actions have disappointed those reasonable expectations and frustrated the common purpose of the eBay Agreement.

52. eBay breached the covenant of good faith and fair dealing implied in all contracts by not providing the same privileges to Plaintiffs as it provided to Plaintiffs' competitors, despite the fact that Plaintiffs and their competitors paid like fees for such services. As a result of eBay's actions, Plaintiffs did not receive the benefits that were inherent in the eBay Agreement.

53. As a proximate result of eBay's breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered damages in an amount according to proof at trial and in excess of the jurisdictional minimum of this Court. eBay's actions were so callous in depriving Plaintiffs of their livelihood without justification or adequate notice for the exercise of their rights as to warrant an award of exemplary and punitive damages, as well as other damages according to proof at trial, but in excess of this Court's jurisdictional minimum.

**Breach of the Implied Covenant of Good Faith**

**and Fair Dealing Related to Retaliatory Action**

**Count 2**

**(As to Plaintiffs Windsor Auctions and JA)**

54. Plaintiffs Windsor and JA incorporate by reference paragraphs 1 through 53 inclusive, as if fully set forth here.

55. eBay had no legitimate reason to terminate all user IDs associated directly or indirectly with Greg Skibbee or Plaintiffs Windsor Auctions and JA. Inasmuch as there was no justification for eBay's termination of the user IDs, the inescapable conclusion is that eBay terminated all user IDs that had any relationship to or association with Greg Skibbee to punish and retaliate against him for the filing of the instant lawsuit. Indeed, Mr. Skibbee and some of

1   the holders of user IDs terminated at the same time are not Plaintiffs in this action. Specifically, eBay demonstrated its unjustified intent, in part, by terminating user IDs of individuals previously associated with Plaintiffs but who were independent of Plaintiffs and who had signed their own contracts to sell wares on the eBay Live Auctions' platform.

56. The only purpose of eBay's widespread termination action was to retaliate against Plaintiffs Windsor Auctions and JA and deprive them and their principals of a source of income to pursue their legal claims.

57. Implied in every contract is the covenant of good faith and fair dealing that each party to the contract will not do anything to deprive the other of the benefits of the contract in an arbitrary or capricious fashion.

58. Plaintiffs Windsor Auctions and JA acted in good faith by unsuccessfully attempting to bring to eBay's attention a misuse of their platform and an unfair competitive advantage given to a selected live auction seller over others. eBay has breached the covenant implied in all contracts by maliciously and willfully terminating Plaintiffs Windsor Auctions' and JA's user IDs prematurely due to its filing suit.

59. As a proximate result of eBay's breach of the covenant referred to above, Plaintiffs Windsor Auctions and JA have suffered damages in an amount according to proof at trial and far in excess of the jurisdictional amount of this Court. Its actions were so callous in depriving Plaintiffs Windsor Auctions and JA of their livelihood without justification or adequate notice for the exercise of their rights as to warrant an award of exemplary and punitive damages, as well as other damages according to proof at trial, but in excess of this Court's jurisdictional minimum.

## PRAYER FOR RELIEF

**Wherefore, all** Plaintiffs pray for damages as follows:

1. That this Court award Plaintiffs compensatory and incidental damages in a sum according to proof, but far in excess of the jurisdictional amount of this Court.

2. That this Court award Plaintiffs exemplary and punitive damages in a sum according to proof.

1   3.  That this Court award Plaintiffs the costs of this action.

2   4.  That this Court award Plaintiffs reasonable attorneys' fees and expenses.

3   5.  That this Court grant such other and further relief as it should deem just.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: JULY _24, 2008                BERLINER COHEN


BY:  /S/ H. ANN LIROFF
     ATTORNEYS FOR PLAINTIFFS
     WINDSOR AUCTIONS, INC.,
     JEWELRY AUCTIONS CORPORATION AND
     UNIVERSAL COLLECTIBLES, LLC